United States District Court
Southern District of Texas
**ENTERED**
January 16, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR JOYAL BARKER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-02816 |
| | § | |
| BRYAN COLLIER, BOBBY LUMPKIN, | § | |
| KENNETH PUTNAM, AMBER OCHOA, | § | |
| MARCUS SPIVEY, MELISSA BENNNET, | § | |
| EDGAR HUIPUS, ASHLEY LOPEZ, and | § | |
| LANNETTE LINTHICUM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arthur Joyal Barker ("Barker") filed a civil rights complaint alleging that Defendants, Texas Department of Criminal Justice ("TDCJ") officials and medical providers, failed to assign him a heat sensitivity score based on his medical conditions, which would entitle him to air-conditioned housing and transportation.[1] Barker contends that Defendants' alleged actions and omissions violated his rights under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, the Rehabilitation Act, and the Texas Constitution. Barker seeks injunctive relief along with compensatory and punitive damages. (*See* Dkt. No. 1 at 4); (Dkt. No. 1-2 at 5–13). Barker

---

[1] Defendants are Bryan Collier, Executive Director of the TDCJ, (Dkt. No. 1-2 at 1), Bobby Lumpkin, Director of TDCJ's Correctional Institutions Division, (*id.*), Kenneth Putnam, then-Senior Warden of the Jester Unit III, (*id.*), then-Assistant Warden of the Jester III Unit, (*id.* at 2), Marcus Spivey, Major at the Jester III Unit, (*id.*), Dr. Lannette Linthicum, Director of TDCJ's Health Services Division, (*id.*), Melissa Bennett, Major at the Jester Unit III, (*id.*), Ashley Lopez, Grievance Coordinator, (*id.*), Edgar Hulipas, a doctor at the Jester III Unit, (*id.*). Barker sues Defendants in both their individual and official capacities. (*Id.*).

also appears to raise a claim that the mishandling of his grievances violated his First Amendment right of access to the courts. (Dkt. No. 1 at 4–5).

Now pending is Defendants' Motion for Summary Judgment, (Dkt. No. 38), in which Defendants seek summary judgment on all claims. For the following reasons, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

Barker alleges that he suffers from Type II Diabetes, hyperglycemia, hypertension, and congestive heart failure. (Dkt. No. 1-2 at 3). He contends that these conditions, along with medications he takes to treat them, make him sensitive to heat and put him at risk of serious illness if exposed to heat. (*Id.* at 4). Based on his health conditions and TDCJ policy, Barker contends that he should have been given a heat sensitivity score to ensure that he would be assigned to air-conditioned housing. (*Id.* at 4–5). He also complains that officials at the Jester III Unit, where he was housed when this suit was filed, refused to address his grievances about this issue in a timely fashion. (*Id.* at 10).

Barker has been medically unassigned since June 10, 2019. (Dkt. No. 40 at 31). This means that he is exempt from work assignments that expose him to extreme heat or direct sunlight. (*Id.*); (Dkt. No. 1-1 at 30). In December 2021, Barker began filing grievances seeking information about his heat sensitivity score. (Dkt. No. 1-1 at 15). TDCJ officials responded that he did not have a heat sensitivity score and that one is necessary for an assignment to air-conditioned housing. (*Id.*).

In February 2022, Barker filed a Step 1 grievance contending that he should have a heat sensitivity score that would entitle him to air-conditioned housing. (*Id.* at 30–31).

2

He was seen by a medical provider on March 30, 2022, and his restrictions were updated, but his heat sensitivity score was not changed. (*Id.* at 31). Based on this, the Practice Manager who reviewed Barker's grievance concluded that Barker did not meet the criteria for placement in air-conditioned housing. (*Id.*). Barker wrote to a number of TDCJ officials and filed a Step 2 grievance, which was denied on the same grounds. (*Id.* at 32–33).

On October 10, 2022, a doctor diagnosed Barker with severe heart disease and increased his dosage of a beta blocker called metoprolol. (Dkt. No. 40 at 29). Metoprolol is associated with heat stress. (*Id.* at 24). The same month, Barker received a heat sensitivity score entitling him to air-conditioned housing and transportation in air-conditioned vehicles. (*Id.* at 31–32). Barker has since been transferred to a new unit where he is assigned to air-conditioned housing. (*Id.* at 33-36).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Once the movant presents evidence demonstrating entitlement to summary judgment, the nonmovant must present specific facts showing

3

that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### III. DISCUSSION

Barker contends Defendants' conduct, summarized above, violated his rights under the First, Eighth and Fourteenth Amendments, the Americans with Disabilities Act, the Rehabilitation Act, and the Texas Constitution. (*See* Dkt. No. 1); (Dkt. No. 1-2). He requests a permanent injunction, as well as compensatory and punitive damages. (Dkt. 1-2 at 10). The Court turns first to Barker's request for injective relief then addresses the remainder of Barker's claims.

#### A. INJUNCTIVE RELIEF

Barker requests injunctive relief. (Dkt. No. 1 at 4). His request is moot. "Under Article III of the Constitution this Court may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988) (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 142 (1987)). "[M]ootness has two aspects: 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). "If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *American Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citation omitted). "With the designation of mootness comes the concomitant designation of non-justiciability." *Id.* (citation omitted).

As noted above, Barker has had a heat sensitivity score that entitles him to air-conditioned housing since October 2022. (Dkt. No. 40 at 29). He therefore already has what he asks the Court to compel through an injunction. Because this Court cannot grant any relief through an injunction that Barker has not already received, this aspect of the dispute has been resolved and is moot. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. ___, 140 S.Ct. 1525, 1526, 206 L.Ed.2d 798 (2020) (per curiam) (holding request for injunctive relief moot when the defendant had already provided the relief sought by the injunction). To the extent that Barker seeks injunctive relief, his claims are dismissed as moot.

    **B.**     **OFFICIAL CAPACITY CLAIMS**

Barker also sues Defendants in their individual and official capacities. (Dkt. No. 1-2 at 1–2). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citing *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam)). A suit for damages against a state official in his official capacity is not a suit against the individual, but against the state. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Accordingly, Defendants are entitled to summary judgment on all official-capacity claims for money damages.

    **C.**     **TEXAS CONSTITUTIONAL CLAIMS**

Barker also asserts Defendants' alleged conduct violates his rights under the Texas Constitution. (Dkt. No. 1-2 at 4). "[C]ivil rights claims under the state constitution are

. . . unavailing because tort damages are not recoverable for violations of the Texas Constitution." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995) (holding that "Texas has no provision comparable to § 1983" and "there is no implied private right of action for damages arising under the . . . Texas Constitution"). Because there is no private right of action under the Texas Constitution, Defendants are entitled to summary judgment on Barker's state constitutional claims.

### D. FEDERAL STATUTORY CLAIMS

Barker also asserts claims under the Americans with Disabilities Act and the federal Rehabilitation Act. (Dkt. No. 1-2 at 6). Defendants argue that neither statute permits claims against defendants in their individual capacities.

"The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against disabled, but otherwise qualified individuals." *Lollar v. Baker*, 196 F.3d 603, 608–09 (5th Cir. 1999). "To enforce its provision, the Act provides for suit against 'any program or activity receiving Federal financial assistance.'" *Id.* at 609 (quoting 29 U.S.C. § 794 (1999)).

The individual defendants are not "programs or activities." Therefore, there is no basis for suit against the individual defendants under the Rehabilitation Act. Nor does 42 U.S.C. § 1983 provide a basis for suit against the individual defendants for violations of the Rehabilitation Act. *Lollar*, 196 F.3d at 609–10. Similarly, courts have held that the Americans with Disabilities Act provides for suit against a "public entity" that violates the Act, *see* 42 U.S.C. § 12132, but not against individual state employees. *See, e.g., Alsbrook*

6

*v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); *Comeaux v. Thaler*, No. 4:01-CV-01811, 2008 WL 818341 at *18 (S.D. Tex. 2008). Barker's federal statutory claims must therefore be dismissed.

    **E.**    **EIGHTH AMENDMENT**

Barker next contends that the Defendants' alleged conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. No. 1-2 at 6–7). To rise to the level of a constitutional violation, prison officials must exhibit deliberate indifference to a prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). "Deliberate indifference" is more than mere negligence, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. at 1978. Rather, deliberate indifference requires that the defendant be subjectively aware of a substantial risk of serious harm to the inmate and recklessly disregard that risk. *Id.* at 829, 836, 114 S.Ct. at 1974, 1978.

> Deliberate indifference is an extremely high standard to meet . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'

*Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

The evidence shows that Barker sent complaints to TDCJ officials arguing that he should be in air-conditioned housing. (Dkt. No. 1-1 at 15, 30–32). He received responses

7

explaining that he lacked the heat sensitivity score under the TDCJ heat policy to qualify for air-conditioned housing. (*Id.* at 31-32). In October 2022, following a medical evaluation, Barker received the required heat sensitivity score and is now in air-conditioned housing. (Dkt. No. 40 at 31–36).

Barker makes no showing that any defendant was aware that Barker suffered from a medical condition that required him to be assigned to air-conditioned housing and ignored that fact to deprive him of such housing. At most, Barker's allegations show that he disagreed with his prior medical evaluations and believes that he should have been assigned to air-conditioned housing sooner than he was. This disagreement is insufficient to show deliberate indifference, even if Barker is objectively correct and Defendants were negligent in failing to so realize. "[A]cts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (internal quotation marks and citations omitted).

### F.     EQUAL PROTECTION

Barker next contends that Defendants' failure to assign him a heat sensitivity score violated his Fourteenth Amendment right to equal protection of the laws. To prevail on his equal protection claim, Barker "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (citing *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)).

While Barker does not claim to be a member of any protected class, he can still be a "class of one" for equal protection purposes.

> An equal protection claim that is premised on differential treatment but not based on membership in a suspect class or the infringement of a fundamental right may be cognizable as a so-called "class of one." We review such claims under a two-prong test: the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment.

*Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (internal quotations and footnotes omitted).

Barker identifies another inmate who, he alleges, had similar health conditions, and received a heat sensitivity score. (*See* Dkt. No. 46 at 9–10, 34–38). The Defendants respond that "[m]edical treatment is too fact-dependent to demonstrate an irrational difference based on a layperson's affidavit comparing their own condition with that of a comparator." (Dkt. No. 48 at 6). While the Defendants are undoubtedly correct that a layperson's affidavit is insufficient to carry Barker's ultimate burden of proof on this issue, that is not the standard of review on a motion for summary judgment. Barker's identification of an apparently similarly situated inmate who was treated differently at least raises a disputed issue of material fact with regard to Barker's equal protection claim.

Despite that, the relief Barker seeks is unavailable to him. As discussed above, *see supra* Part III.A., Barker's claim for injunctive relief is moot. Nor can he recover damages. "Prisoners bringing federal lawsuits . . . ordinarily may not seek damages for mental or

emotional injury unconnected with physical injury." *Minneci v. Pollard*, 565 U.S. 118, 129, 132 S. Ct. 617, 625, 181 L. Ed. 2d 606 (2012). While Barker argues that the delay in moving him to air-conditioned housing could have caused him heat-related illness, he does not allege that he suffered any such illness. A hypothetical injury is not an actual physical injury. He therefore cannot recover compensatory damages.

Similarly, Barker fails to plead facts showing that he is entitled to collect punitive damages. "[P]unitive damages may be awarded only when the defendant's conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994)). "The standard requires 'recklessness in its subjective form,' i.e.[,] 'a subjective consciousness or a risk of injury or illegality and a criminal indifference to civil obligations.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 2125, 116 L.Ed.2d 494 (1999)).

Barker pleads no facts showing the individual defendants in this case were aware of any similarly situated inmate or were aware that Barker was treated differently than that inmate. He therefore fails to plead the requisite mental state for recovery of punitive damages. Because the remedies Barker seeks for his equal protection claim are unavailable, Defendants are entitled to summary judgment on this claim.

### G.   ACCESS TO THE COURTS

Finally, Barker contends that delays in processing his Step 1 grievance violated his right of access to the courts. (Dkt. No. 1 at 4–5). To prevail on such a claim, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a nonfrivolous,

arguable legal claim was hindered by the Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413 (2002); *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *see also Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997). Barker identifies no such injury.

It appears that the grievance Barker is referencing is what formed the basis of this lawsuit. (*See* Dkt. No. 1 at 4–5). Barker filed this suit, it is not barred by limitations, and the Defendants do not argue that Barker failed to exhaust his available administrative remedies. Because Barker suffered no injury from the alleged delay, there is no violation of his right of access to the courts.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **GRANTS** the Motion. (Dkt. No. 38). A final judgment will be entered separately.

It is SO ORDERED.

Signed on January 12, 2024.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**